UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REBECCA BROWN,

                    Plaintiff,                                    **DECISION AND**
                                                                 **ORDER**
                                                                 11-CV-519
                                                                 (VEB)

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____

## I. INTRODUCTION

In February of 2008, Plaintiff Rebecca Brown applied for disability insurance benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since January 2006. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, Olinsky Law Group, Karen S. Southwick, Esq. of counsel, brings this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).  On June 21, 2012, the parties, by and through their respective counsel consented to the jurisdiction of the undersigned.  (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for disability insurance benefits in February of 2008, alleging disability beginning on January 30, 2006. (T at 89-96).[1]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Thomas P. Tielens on January 12, 2010, in Utica, New York. (T at 20). Plaintiff appeared with an attorney, Anthony P. Castenzi, Esq., and testified. (T at 20, 25-35).  Plaintiff's husband also attended the hearing, but did not testify. (T at 20).

On February 3, 2010, ALJ Tielens issued a written decision finding that Plaintiff was not disabled between the alleged onset date and the date last insured and therefore not entitled to benefits. (T at 8-16).  The ALJ's decision became the Commissioner's final decision on March 15, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on May 6, 2011.(Docket No. 1).  The Commissioner interposed an Answer on November 28, 2011. (Docket No. 8). Plaintiff filed a supporting Brief on February 13, 2012. (Docket No. 12). The Commissioner filed a Brief in opposition on March 29, 2012. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further administrative proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006 (the "date last insured"), and did not engage in substantial gainful activity between the alleged onset date (January 30, 2006) and the date last insured. (T at 10).

The ALJ concluded that Plaintiff's degenerative disc disease of the cervical spine was a "severe" impairment under the Act. (T at 10).  However, the ALJ determined that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 12).

The ALJ determined that, as of the date last insured, Plaintiff retained the residual

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

functional capacity to lift no more than 10 pounds at a time; sit for 6 hours in an 8-hour workday; stand for 2 hours in an 8-hour workday; and walk for 2 hours in an 8-hour workday.  The ALJ found that Plaintiff could complete a typical 8-hour workday or 40-hour work week. (T at 12-15).

The ALJ found that Plaintiff could not perform her past relevant work as a certified nurse's aide, certified home health aide, or sales associate as of the date last insured. (T at 15).  However, considering Plaintiff's age (33 years old on the alleged onset date), education (high school), and residual functional capacity, the ALJ determined that, as of the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 15-16).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date (January 30, 2006) through the date last insured (December 31, 2006) and was therefore not entitled to benefits. (T at 16).  As noted above, the ALJ's decision became the Commissioner's final decision on March 15, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers four (4) principal arguments in support of this position.  First, Plaintiff argues that the ALJ did not adequately develop the medical record.  Second, Plaintiff contends that the ALJ's residual functional capacity determination is not supported by substantial evidence.  Third, Plaintiff challenges the ALJ's credibility assessment.  Fourth, Plaintiff argues that the ALJ's step 5 determination was flawed.  This Court will address each argument in turn.

###### a.    Development of the Record

It is well-settled that in light of the "'essentially non-adversarial nature of a benefits proceeding,'" the Commissioner has an affirmative duty to develop the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).

On January 30, 2006, Plaintiff was injured in a motor vehicle accident. (T at 268). She was treated in the days following the accident by Dr. Sudershan Dang for a back ache, neck injury, bilateral leg injuries, and right arm injury. (T at 269).  Plaintiff underwent physical therapy and, eventually, neck surgery. (T at 269).  In April of 2008, Dr. Dang dictated a summary of the treatment history and opined that Plaintiff "is disabled with chronic neck and back problems." (T at 269).  Dr. Dang reported a diagnosis of cervical radiculopathy status post surgery, history of hypertension, hypercholestermia, thyroid dysfunction, and chronic backache. (T at 269).

The ultimate disability determination decision is reserved to the Commissioner, 20 C.F.R. § 404.1527(e); SSR 96-5p.  However, under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater,

221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In the present case, the ALJ noted there was "very little objective medical evidence contained in the record." (T at 10). In particular, the ALJ referenced the lack of "examinations from any acceptable medical sources from the time of the claimant's accident." (T at 11).  The ALJ then afforded Dr. Dang's opinion "little weight" because it was "not consistent with the evidence of record and . . . completed after the relevant time period." (T at 15).

This Court finds that the ALJ did not fulfill his duty to develop the record.  Dr. Dang's summary clearly indicated that he had examined Plaintiff at the time of her accident (T at 269).  The ALJ recognized that the record was lacking examinations from acceptable medical sources from the time of the accident, but made no request for Dr. Dang's

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

treatment notes from that period.

In addition, the ALJ mischaracterized Dr. Dang's summary. To wit, the ALJ noted that Dr. Dang "summarized his clinical findings during the relevant time period as consisting of some high blood pressure and a diagnosis of hyperthyrodism." (T at 14). This is incorrect. Dr. Dang reported that he first saw Plaintiff for a routine physical on "01/06" and that her only issues were right foot pain, hypertension, and eczema of the skin. (T at 269). Dr. Dang noted that he next saw Plaintiff on "02/01/06 which was after the motor vehicle accident . . . ." (T at 269). This strongly suggests that the first visit occurred *prior* to the accident and, thus, prior to the time period relevant to this case. Thus, the fact that Plaintiff had relatively minor complaints before the alleged onset date does not support a finding that the motor vehicle accident did not cause disabling injuries. Moreover, with regard to the relevant time period, Dr. Dang noted that Plaintiff was treated for back ache, neck injury, bilateral leg injuries, and right arm injury. (T at 269).

Further, contrary to the ALJ's suggestion that the record was lacking in "objective medical evidence," the record contained a significant piece of objective medical evidence - the treating physician's assessment that Plaintiff was disabled due to "chronic neck and back problems." (T at 269). Dr. Dang opined that simple movements such as lifting, reaching, pulling, pushing, and grasping were "challenging" for Plaintiff. (T at 273). He found it "obvious" that Plaintiff's "pain significantly restricts her ability to concentrate and focus for [the] sustained periods of time required to perform substantial gainful employment . . . ." (T at 273). Dr. Dang concluded that Plaintiff was "not capable" of "sitting and viewing and monitor or making calls or other sedentary types of employment with the persistence and pace necessary to satisfy the requirements of a five day per week, eight hour day job

9

in a competitive employment setting." (T at 273).

While the treating physician's assessments were rendered after the date last insured, Dr. Dang should have been asked to provide a retrospective opinion concerning Plaintiff's functional limitations as of the date last insured, particularly since he treated Plaintiff during that period and because the impairments in question were evidently caused by the January 2006 motor vehicle accident. See Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 44 (2d Cir.1991)("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [ i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.")(citing Gold v. Secretary of Health, Educ. and Welfare, 463 F.2d 38, 41–42 (2d Cir.1972)(quoting Carnevale v. Gardner, 393 F.2d 889, 890 (2d Cir.1968)); see also Disarno v. Astrue, No. 09-CV-64, 2010 WL 2629808, at *3 (W.D.N.Y. June 28, 2010)(noting that "a retrospective diagnosis may shed considerable light on the seriousness of a Plaintiff's condition during the relevant period").

The ALJ based his findings regarding the extent of Plaintiff's limitations primarily upon his reading of the x-rays and medical imaging during the relevant period (which were generally normal) and his assessment that the course of treatment (physical therapy, chiropractic care, medications, and epidural injections) was conservative.  However, the ALJ is not a medical professional and it is well settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998). The ALJ "is free to resolve issues of credibility as to lay testimony or

to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." Id. (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)); see Filocomo v. Chater, 944 F.Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

Here, the ALJ assigned "little weight" to Dr. Dang's opinion because he found it was "not consistent with the evidence of record" and because it was "completed after the relevant time period." (T at 15).  The decision to discount Dr. Dang's opinion because it was allegedly inconsistent with an underdeveloped record was error.  As discussed above, the ALJ recognized that the record did not contain "examinations from any acceptable medical sources from the time of the claimant's accident." (T at 11).  Rather than discounting Dr. Dang's opinion as inconsistent with a record that, by the ALJ's own admission, did not contain important information, the ALJ should have re-contacted Dr. Dang and requested such records.  This error requires remand. See 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Further, the fact that Dr. Dang's summary was prepared after the date last insured does not, without more, provide a basis for disregarding his opinion.  As discussed above,

11

Dr. Dang could (and should) have been asked to provide a retrospective opinion. See Pollard v. Halter, 377 F.3d 183, 194 (2d Cir.2004) (finding that "district court erred insofar as it categorically refused to consider the new evidence simply because it was generated after the relevant time period and did not 'explicitly discuss [claimant's] condition during the relevant time period'").

For the foregoing reasons, this Court finds that a remand is necessary for further development of the record.  Dr. Dang should be re-contacted and asked to supply his treatment notes from the relevant time period and to provide a retrospective opinion concerning Plaintiff's functional limitations during that period.  The ALJ should also request the contemporaneous treatment records from St. Elizabeth's Hospital (where Plaintiff was treated following her accident).  Dr. Buckley, Plaintiff's treating surgeon, appears to have first treated Plaintiff in December of 2007, after the date last insured. (T at 213).  He performed cervical fusion surgery in March 2008. (T at 108).  However, because the surgery appears to have been related to injuries caused by the January 2006 motor vehicle accident, Dr. Buckley's records should be requested and a retrospective opinion concerning Plaintiff's limitations during the relevant period sought.

  **b.    RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ determined that, during the relevant time period, Plaintiff retained the residual functional capacity to lift no more than 10 pounds at a time; sit for 6 hours in an 8-hour workday; stand for 2 hours in an 8-hour workday; and walk for 2 hours in an 8-hour workday.  The ALJ found that Plaintiff could complete a typical 8-hour workday or 40-hour work week. (T at 12-15).

The ALJ's RFC determination was not supported by substantial evidence.  First, the RFC assessment is contradicted by the treating physician's opinion, as outlined above.  Dr. Dang specifically questioned Plaintiff's ability to sit for prolong periods and to maintain concentration, persistence, and pace due to significant pain.  (T at 269, 273).  The ALJ erroneously assigned "little weight" to Dr. Dang's opinion based upon an underdeveloped record.  Further, the ALJ incorrectly discounted Dr. Dang's assessment because it was rendered after the date last insured without first requesting a retrospective opinion.

Second, the ALJ's RFC findings were also inconsistent with the impressions provided in February 2006 by Roger Herbowy, a physical therapist.  Mr. Herbowy assessed "significant disability" with "[f]unctional losses," including walking, working, sleep disturbances, reaching, carrying, dressing, ascending and descending stairs, ambulation on uneven ground, driving, standing, squatting, and lifting. (T at 274).  Mr. Herbowy treated

13

Plaintiff on numerous occasions during the relevant time period. ( T at 276).  In July of 2006, Mr. Herbowy noted continued loss of motion in the cervical, dorsal, and lumber spines, along with decreased tolerance to prolonged static posturing. (T at 277).

Although not an "acceptable medical source," under the Social Security Regulations, 20 C.F.R. § 404.1513 (a), a physical therapist is considered an "other source," whose assessment should be given some weight, especially when there is a treatment relationship with the claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Mejia v. Barnhart, 261 F. Supp.2d 142, 148 (E.D.N.Y.2003 (finding that the ALJ should have afforded a treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a regular basis and [ ] offered a diagnosis consistent with that of the treating psychiatrist"); Rivera v. Bowen, 665 F.S upp. 201, 206 (S.D.N.Y.1987) (finding that the opinions of chiropractors and physical therapists must be accorded at least some weight). The ALJ characterized Plaintiff's course of physical therapy as "relatively limited," (T at 14) without reconciling that finding with the opinion and history provided by Mr. Herbowy. Although the ALJ was not obligated to give controlling weight to Mr. Herbowy's opinion, it should have been addressed and afforded some consideration.

Lastly, no treating provider rendered an opinion supporting the ALJ's determination regarding, for example, Plaintiff's ability, during the relevant time period, to sit for prolonged periods or maintain her attention and concentration despite her pain.  As outlined above, two treating providers offered opinions to the contrary.  Accordingly, a remand is required for further development of the record and reconsideration of Plaintiff's RFC during the

14

relevant time period.

c.   **Credibility**

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to

determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limited effect of the symptoms were not credible to the extent alleged. (T at 14).   The ALJ's credibility assessment will

16

necessarily need to be revisited on remand.  Plaintiff's allegations of disabling pain and limitations during the relevant period are supported by the assessments of Dr. Dang and Mr. Herbowy, which the ALJ improperly discounted.  The ALJ erroneously relied upon the fact that there was "very little objective medical evidence in the record" and "no examinations from any acceptable sources from the time of [Plaintiff's] accident" without addressing obvious avenues for further developing the record.

The ALJ also improperly substituted his medical judgment by characterizing Plaintiff's physical therapy as "relatively limited," a fact contradicted by the evidence and the opinion offered by the treating physical therapist. (T at 274, 276, 277).  Lastly, the ALJ should not have discounted Plaintiff's credibility based on the fact that she home-schooled her children. It is well-settled that "'a claimant need not be an invalid to be found disabled' under the Social Security Act." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, Plaintiff explained that she performed "some" of the home-schooling, but her mother (who lived next store) helped with "the majority of it" because of Plaintiff's difficulties. (T at 28).  Accordingly, the ALJ's credibility determination should also be revisited on remand.

### d.    Step 5 Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to (1) assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then (2) determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66

(1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the

Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).  When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

In this case, the ALJ assessed Plaintiff's physical ability and concluded that Plaintiff retained the residual functional capacity to perform the full range of sedentary work. (T at 16). The ALJ found that Plaintiff's non-extertional impairments had little to no effect on her occupational base of unskilled sedentary and light work. (T at 15).  Plaintiff was classified as a younger individual. (T at 15).  To determine whether jobs exist in the national economy that Plaintiff could perform during the relevant time period, the ALJ referenced Medical-

19

Vocational Rule 201.28 and concluded that a finding of "not disabled" was directed. (T at 16).

The ALJ's step 5 analysis is necessarily dependent on his RFC assessment.  That assessment is flawed and must be revisited on remand for the reasons outlined above.  Accordingly, the step 5 analysis will likely need to be reviewed on remand.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is ordered that the case be remanded for further proceedings consistent with this Decision and Order.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is DENIED, Plaintiff's Motion for Judgment on the Pleadings is GRANTED, and this case is remanded for further administrative proceedings.

## V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is DENIED; and it is further

ORDERED, that Plaintiff's motion for judgment on the pleadings is GRANTED; and it is further;

ORDERED, that this case is remanded to the Commissioner of Social Security pursuant to sentence four of Section 405 (g) for further proceedings consistent with this Decision and Order.

So Ordered.

Victor E. Bianchini
United States Magistrate Judge

Dated:   July 26, 2012

Syracuse, New York